UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :

ZANN KWAN,                            :
                                      :

                       Plaintiff,  :          10 Civ. 1389 (KBF)
                                      :

        -v-                     :
                                      :        MEMORANDUM OPINION
THE ANDALEX GROUP, LLC,        :           & ORDER
                     Defendant.  :
                                      :
------------------------------------ X

KATHERINE B. FORREST, District Judge:

    Plaintiff Zann Kwan is a woman of Singaporean descent.  She
brought this action in February 2010, alleging violations of
Title VII of the Civil Rights Act of 1964 ("Title VII") and the
New York State and City Human Rights Laws ("NYSHRL" and
"NYCHRL," respectively) by her employer, the Andalex Group, LLC
("Andalex"), for discrimination on the basis of gender and
national origin and for retaliation.  Plaintiff also alleges
that Andalex violated the Employee Retirement Income Security
Act of 1974 ("ERISA") by failing to provide her with timely
notice of her rights under the Consolidated Omnibus Budget
Reconciliation Act ("COBRA") after her termination.

    The parties have conducted discovery, including exchanging
documents and taking a number of depositions.  Defendant has now
moved for summary judgment as to all of plaintiff's claims.
That motion was fully briefed on April 4, 2012.

No rational juror could find for plaintiff in this case after comparing the overwhelming facts in the record supportive of legitimate business reasons for plaintiff's termination with what may only be characterized as cobbled together conduct allegedly supportive of discrimination and retaliation.  The law requires far more than what plaintiff has presented in opposition to defendant's motion.  Accordingly, for the reasons set forth below, this Court GRANTS that motion in its entirety.

I.   FACTS

Andalex is a small, New York-based, family-owned, real-estate management company.  It specializes in large gaming and commercial properties.  During the period of plaintiff's employment, from April 9, 2007 to September 26, 2008, Andalex had approximately 20-25 employees.  Allen Silverman is the founder and Chief Executive Officer ("CEO") of Andalex.  His sons, Andrew Silverman and Alexander Silverman, are the Chief Investment Officer ("CIO") and Chief Operations Officer ("COO"), respectively.  Steven Marks is the Chief Financial Officer ("CFO").

Plaintiff Kwan was born in Singapore and came to the United States in 2001.  In late 2006, Kwan used Advice Personnel Inc., a recruiting firm, to locate a position at Andalex.  She prepared a resume which was provided to Andalex in connection with her job interview in March 2007.  Kwan represented that

just prior to joining Andalex, she had a successful four-year position as a Vice President with Allstone Capital Group ("Allstone") in New York. Kwan's deposition testimony, however, revealed a number of the Allstone-related qualifications on her resume to be somewhere on the spectrum between misleading and untrue. Determining where exactly those alleged qualifications fall on that spectrum is not required for purposes of deciding defendant's motion. At the time Kwan was hired, Andalex did not know of those mischaracterizations or misrepresentations. Andrew Silverman, who made the ultimate decision to both hire and fire Kwan, testified that he relied on her resume in making that decision.[1]

After being interviewed by Marks and Alexander and Andrew Silverman, Kwan was hired by Andalex in April 2007 as Vice President of Acquisitions. Andrew Silverman made the final decision to hire her. Kwan was an at-will employee, and the offer letter she signed stated that "the employment relationship can be terminated by either one of us at any time for any reason." Her primary responsibilities were supposed to include performing sophisticated financial analyses for various real

---

[1] The resume issues were not discovered until after plaintiff had been terminated and were not part of the decision that led to her termination. As such, plaintiff's deposition testimony would be most useful to defendant at the damages stage if this case were to proceed – which, for the reasons set forth herein, it will not. That testimony also has some utility, however, as corroboration of the facts regarding plaintiff's inability to perform her basic job functions, for which the overwhelming evidence indicates she was terminated.

estate projects Andalex was considering.  She was paid a six-figure salary plus benefits and was eligible for a discretionary year-end bonus.  In December 2007, Kwan received a $5,000 bonus from Andalex, despite having been at the company for less than a year.  Kwan also received two weeks of paid vacation and health insurance.  She requested and received vacation time to attend to personal matters, including her brother and sister's respective weddings in Singapore.

From April 2007 until August 2007, Kwan reported to Andrew Feder.  Feder left Andalex on amicable terms in August 2007.  At his deposition, Feder testified that during the four months that Kwan worked for him, he was satisfied with her work.  Following Feder's departure, Kwan began reporting to Marks, Andalex's CFO.  Plaintiff asserts that she also reported to Andrew Silverman.

Andrew Silverman testified that he had heard a number of negative things about Kwan's job performance and that he, himself, had had negative experiences working with her.  Alex Silverman also testified that another person who worked for Andalex, Ken Morris, complained to him about how Kwan had conducted herself during several business meetings in Texas.[2] Marks also told Alex Silverman that he was shocked by Kwan's

---

[2] Alex Silverman testified that Morris complained, and Marks also testified, that Kwan took a photograph of Marks's "crotch" during a meeting in Mexico. Marks also testified that Kwan took a photograph of him during a meeting on a different occasion as well.  Plaintiff disputes the particulars of what occurred at those meetings but conceded that she took a photograph of Marks's "groin" in Mexico.

behavior in certain meetings and testified regarding that behavior at his own deposition.  According to Alex, Morris also complained to him that Kwan refused to go out to dinner while traveling on business, which, Alex testified, was something that was very important to the company because it allowed colleagues to bond and "pick each other's brains."

Andrew Silverman made the ultimate decision to fire Kwan. He testified that that decision was based on accumulated deficiencies in Kwan's performance over a period of time.  He had received feedback from a number of people, including Marks, that Kwan was unable to complete her tasks, lacked an understanding of the business, was unable to produce financial information of any value, her analyses were deficient, and it appeared that she did not have the work experience that Andalex had expected her to have based on the representations on her resume.

Andrew Silverman described Kwan's lack of basic financial skills as "atrocious" and "really embarrassing."  He testified that she "just didn't have the skills" and "didn't have the skill set to be able to do th[e] type of financial modeling" required.  He also testified that he "was embarrassed for her" because she could not do the work.

In one instance when Andalex was considering purchasing a property in Mexico, an individual from Goldman Sachs who had

been provided with a model prepared by Kwan called Andrew Silverman.  The Goldman Sachs individual said that based on the model, the investment did not make sense.  Andrew Silverman stated that he then realized that the expenses had been calculated incorrectly, and that the model was producing incorrect results.  Marks testified that he and another individual spent eight hours redoing the model.  Kwan disputes that the model worked incorrectly but does not dispute that Andrew Silverman received a call from Goldman Sachs regarding the unusual output from the model.[3]

In addition to the issue regarding the model for the Mexico property, Marks identified at his deposition a number of other deficiencies in Kwan's job performance that he had experienced. Particularly, he testified about her inappropriate conduct at business meetings, her inadequate performance with respect to a deal in Argentina, her inadequate performance with respect to a financial model prepared for conversations with J.P. Morgan about equity funding, her failure to meet expectations regarding the hours she worked and her unexplained absences from her desk. On one occasion, Marks asked her to do work on the weekend: Kwan testified that it was a Sunday and that she had asked

---

[3] Plaintiff objects that Andrew Silverman's testimony about the call he received from a Goldman Sachs investor and the contents of that call is hearsay. Such evidence is not hearsay, however, as to the fact that Andrew received the call and as to the facts of what he heard.  Those facts, alone, are significant on this motion, independent of the truth of the matter asserted by the investor.

whether it was "an emergency" and would have changed her plans if it was; she also explained that she needed certain documents translated to do the work. She conceded that she did not do that work until Monday.

During the time that Kwan was employed by Andalex, the company's business focus changed, and it began working on projects in Latin America. Kwan did not speak Spanish and so required translation assistance to do certain work. Her work experience and skills were also less relevant to Andalex's new focus on hospitality and gaming properties. After Kwan was fired, she was replaced by a female independent contractor, Marta Gutierrez, who spoke Spanish. Two days before Andalex terminated Kwan, the company terminated its Portfolio Comptroller, Burton Garber, a male executive.

Kwan claims that the following conduct is evidence of gender discrimination: (1) She heard Andalex CEO, Allan Silverman, an elderly man to whom she did not report, refer to her as "girl" or "the girl" several times; (2) she was yelled at by Marks in December 2007 for poor performance and found the experience traumatic (she concedes that after that single incident, she continued to socialize with Marks and never requested to report to someone else; she also testified that Marks did not make any comments about her gender during the meeting); (3) on a couple of occasions, the Silvermans allegedly

apologized for having used curse words in front of "a lady;" and
(4) Marks criticized her for being "strong willed" and "not
embarrassed" to get what she wanted.[4]

Kwan claims that the following conduct is evidence of
national origin discrimination:  (1) A "few times," Marks
commented that her accent was "weird" because of the way she
pronounced the word "calendar" and made Kwan repeat the word
with the pronunciation he suggested; and (2) on another
occasion, after Kwan returned from the immigration office to
extend her Green Card, Marks commented that he did not know that
she was an "illegal alien."

In terms of retaliation, in her papers in opposition to
this motion, plaintiff only puts forth a meeting she had on
September 3, 2008, in which she declares that she complained to
Alex Silverman about discriminatory treatment in pay.  During
that conversation, Alex explained the decision-making process
regarding compensation as "[w]e each talk to [Allen] Silverman
about our own men, and he decides."  Kwan asked if she was "his"
(Alex's) "man," and Alex said that she was probably Andrew

---

[4] Kwan also refers to comments allegedly made to her by female co-workers for
the truth of the matters asserted - those comments are hearsay.  One of the
co-workers told Kwan about a remark directed at the co-worker, not Kwan, that
has nothing to do with the discrimination Kwan allegedly experienced.  The
other comment was made by a woman in Human Resources, who referred to Andalex
as a "boys' club."  That comment does not constitute actionable
discrimination nor is it be probative of any discriminatory animus leading to
any adverse employment action against Kwan at Andalex.  Plaintiff's complaint
does not allege a hostile work environment claim.  Accordingly, the Court
does not deem those two comments to be pertinent to this motion.

Silverman's.  Plaintiff has not put forth any evidence indicating that Alex ever communicated that conversation to Andrew; and Andrew was the individual who made the ultimate decision to terminate Kwan.

During the time period relevant to this action, Andalex used Paychex, Inc. ("Paychex") as its COBRA claims administrator.  On September 30, 2008, four days after Kwan's termination from Andalex, the woman in Human Resources who handled such matters completed a COBRA data sheet to send to Paychex so that the administrator could send Kwan a notification regarding her rights to continue her health insurance and benefits.  Prior to March 2009, when the issue was first raised by plaintiff's counsel, Andalex was not aware of plaintiff's claim that she and her husband did not receive a COBRA notice from Paychex.  On December 1, 2009, Paychex sent Kwan and her husband the notification forms.  The policy Paychex offered had a monthly premium of $990.24 for both individuals.  At her deposition, Kwan testified that she could not have afforded that insurance premium.  Kwan also testified that between the time when her Andalex coverage lapsed in 2008 and when she obtained health insurance from her new employer in 2010, she and her husband only incurred unreimbursed expenses of a few hundred dollars.  Kwan does not have any documentation of such expenses.

II.  STANDARD OF REVIEW

Summary judgment is proper only "if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment [is] warranted as a matter of law." Barkley v. Penn Yan Central School Dist., 442 Fed. Appx. 581, 581 (2011) (2d Cir. Sep. 6, 2011) (internal quotation marks omitted). "Although the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists, the non-moving party nonetheless must come forward with specific facts showing that there is a genuine issue of material fact for trial." Id. (internal citation and quotation marks omitted).

It is well-settled that conclusory, speculative or self-serving allegations set forth without evidentiary support are insufficient to create a genuine issue of fact. See, e.g., id. at *1, 4; Clayborne v. OCE Bus. Servs., 381 Fed. Appx. 32, 34 (2d Cir. 2010); Savitsky v. Mazzella, 210 Fed. Appx. 71, 73 (2d Cir. 2006). Rather, the non-movant must present "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Summary judgment is equally appropriate in actions alleging employment discrimination as in other types of cases. Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001),

10

cert. denied, 534 U.S. 993 (2001); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997). In a discrimination action, the Court must examine the record as a whole and decide whether the plaintiff could satisfy her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]." E.g., Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation marks omitted).

   III. DISCUSSION

A. Title VII Discrimination and Retaliation Claims

   Plaintiff's complaint asserts claims for disparate treatment based on gender and national origin. (Compl. ¶¶ 12-39.) In her opposition to this motion, however, plaintiff argues that defendant's conduct supports a hostile work environment claim. Disparate treatment and hostile work environment are two distinct legal theories which "differ in pleading and in proof." Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002). As defendant correctly points out in its reply, it is improper for plaintiff to raise a new claim for the first time in response to a motion for summary judgment. See, e.g., Thomas v. Thomas, No. 97 Civ. 4541 (LAP), 2000 WL 307391, at *3 (S.D.N.Y. Mar. 23, 2000), aff'd, 243 F.3d 368 (2d Cir. 2001); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997). Accordingly, this Court does not

consider a hostile work environment claim to be part of this action.

Regarding the claims properly before the Court, plaintiff has not presented sufficient facts even to establish a _prima facie_ case of disparate treatment with respect to either gender or national origin. Nor has she presented sufficient facts to establish a _prima facie_ case of retaliation. Nevertheless, the Court considers whether under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), plaintiff has raised a triable issue of fact that defendant's proffered legitimate, business justifications for her termination are pretextual. She has not.

      1.   *Failure to Establish a Prima Facie Case*

In order to establish a _prima facie_ case of discrimination under Title VII, plaintiff must establish that (1) she is a member of a protected class; (2) she is qualified for his position; (3) she has suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See, e.g., Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). Both plaintiff's gender discrimination and national origin discrimination claims must independently satisfy that basic standard.

There is no question that as a woman of Singaporean origin, plaintiff is a member of two protected classes.  There is also no question that she was fired and that her termination constitutes an adverse employment action.[5]  In addition, for purposes of a prima facie case, plaintiff has raised a triable issue of fact as to whether she was qualified for her position, though there are ample facts in the record suggesting that she was not, supporting defendant's claimed legitimate, business reason for her termination.

Yet, plaintiff cannot establish a prima facie case because she has failed to put forth sufficient facts to tie her termination in any way to her gender or national origin.  Put another way, there are no facts presented that plausibly suggest that plaintiff's termination was based on discriminatory animus of either sort.

---

[5] Plaintiff also makes a number of allegations regarding how the conditions of her employment were different from those of her male colleagues.  (Compl. ¶¶ 12-25.) It is undisputed, however, that plaintiff was eligible for a discretionary bonus and received a $5,000 one in 2007 even though she had been there for less than a year; requested and received vacation time to make two trips to Singapore; received some software and financial training; did not request a corporate credit card and had all of her business expenses fully reimbursed; and had a way to access her work files remotely from home, even if she didn't know about it until July 2008. As such, plaintiff cannot establish that the circumstances she alleged constituted a "materially adverse change" in her employment.  See Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) ("An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities [such as] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities. . . ." (internal quotation marks omitted)).

In order to establish a prima facie case of retaliation, plaintiff must demonstrate a triable issue of fact that (1) she participated in a protected activity; (2) whomever engaged in the allegedly retaliatory conduct knew of that activity; (3) Andalex took an employment action disadvantaging her; and (4) there existed a causal connection between the protected activity and the adverse action. See, e.g., Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).

Plaintiff has failed entirely to set forth sufficient facts to support even a prima facie case of retaliation. Dispositively, the protected conduct in which she declares she engaged was the September 3, 2008 meeting with Alex Silverman. Alex was not the individual who ultimately terminated plaintiff, and there is no assertion or evidence that Alex ever conveyed the fact of the protected activity to Andrew Silverman, the ultimate decision-maker on plaintiff's firing. Thus, plaintiff has failed to satisfy the second element of a prima facie case. In addition, there are no facts that plausibly suggest that that single conversation with Alex Silverman regarding compensation was causally related to plaintiff's termination. Thus, she has failed to satisfy the fourth element of a prima facie case as well.

   2.  *Defendant's Proffered Legitimate, Business Reasons*

For purposes of thoroughness, this Court will assume for the moment that plaintiff has established a prima facie case – which she has not – and address the other stages of the McDonnel-Douglas framework.  Assuming a prima facie case, the burden shifts to Andalex to articulate legitimate, non-discriminatory, non-retaliatory reasons for Kwan's termination.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005).  As described in the fact section above and again below, Andalex has put forward such reasons.  Accordingly, the burden then shifts back to plaintiff:  To survive summary judgment, she must put forth sufficient evidence to raise a triable issue of fact as to whether defendant's proffered reasons are a pretext for intentional discrimination.  See Woodman, 411 F.3d at 76.  More than simple reassertion of conclusory allegations of discrimination is required.  See, e.g., Davis v. Oyster Bay-East, No. 03-CV-1372 (SJF)(JO), 2006 WL 657038, at *11 (E.D.N.Y. Mar. 9, 2006), aff'd, 220 Fed. Appx. 59 (2d Cir. 2007).

As the facts recited above demonstrate, the record certainly supports Andalex's stated legitimate, non-discriminatory, non-retaliatory rationale here:  To wit, defendant had ongoing concerns that plaintiff was unable to perform her job duties at the level expected and acted in an

unprofessional manner.  See, e.g., Genao v. Avon Salon & Spa,
No. 06 Civ. 3667, 2008 WL 190605, at * (S.D.N.Y. 2008) ("Poor
work performance is consistently recognized in this Circuit as a
legitimate, non-discriminatory reason for termination in the
retaliation context.").

While the particular facts of what occurred with regard to
the "Mexico" and "Argentina" incidents may be in dispute,
resolution of those disputes is not necessary to decide this
motion.  There is overwhelming, independent evidence that Kwan's
direct supervisors, Marks and Andrew Silverman, did not believe
that she was qualified to perform her basic job tasks.  See
generally Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985)
("[T]he ultimate inquiry is whether an employee's performance
meets [her] employer's legitimate expectations." (internal
quotation marks omitted)).  Plaintiff's mere assertions that she
was qualified do not raise a triable issue of fact in this
regard.  See, e.g., Aksamit v. 772 Park Ave., Corp., No. 00 Civ.
5520, 2003 WL 22283813, at *4-5 (S.D.N.Y. Oct. 2, 2003).  For
instance, plaintiff could have - but has not - put forward her
financial models or other work product as evidence of her
satisfactory performance or tried to show that Andalex's
expectations were "illegitimate or arbitrary." Meiri, 759 F.2d
at 995 (internal quotation marks omitted).

In addition, Andalex has stated that its business focus changed during the period of Kwan's employment, and Kwan's work experience and lack of Spanish proficiency did not fit the company's new focus.[6]  The law is clear that courts should not second-guess an employer's reasonable business judgment regarding personnel matters.  See, e.g., Fleming v. MaxMara USA, Inc., 371 Fed. Appx. 115, 118 (2d Cir. 2010); Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988).

> 3.  *Failure to Establish Pretext as to Disparate Treatment*

Plaintiff has not put forward sufficient evidence to raise a triable issue of fact that defendant's proffered justifications are merely pretext for discrimination.  Frankly, her claims of discrimination are thin to the point of being inactionable.  Nonetheless, the Court addresses them below.

First, the stray "girl" remarks made by Allen Silverman were made by a non-decisionmaker.  They do not raise an inference of discriminatory animus.  See, e.g., O'Connor v.

---

[6] In her opposition, plaintiff points to deposition testimony from Marks that the shift in Andalex's business focus was unrelated to her termination.  That inconsistency, plaintiff argues, indicates that Andalex's shift-in-business rationale is pretextual. An employer, however, will often have more than one reason for its actions.  Here, while Andrew Silverman declared that the change in business focus was a factor that influenced his decision to fire Kwan, he has testified that her termination was due primarily to her ongoing work performance issues.  That an employer has merely offered different but consistent explanations for its actions does not demonstrate that its explanation was pretextual.  See, e.g., Singh v. Air India Ltd., 108 Fed. Appx. 9, 10 (2d Cir. 2004).  In any event, "a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  St. Mary's Honor Center, 509 U.S. at 515 (emphasis original).  As set forth below, plaintiff has failed to make that latter showing here.

Viacom, Inc., No. 92 Civ. 2399 (LMM), 1996 U.S. Dist. LEXIS
5289, at *13-15 (S.D.N.Y. Apr. 23, 1996)(three isolated remarks
by supervisors were insufficient to establish pretext; stray
remarks absent a demonstrated nexus to challenged personnel
actions will not defeat employer's summary judgment motion);
aff'd, 104 F.3d 356 (2d Cir. 1996); see also Wilson v. N.Y.P.
Holdings, Inc., No. 05 Civ. 10355 (LTS), 2009 U.S. Dist. LEXIS
28876, *80 (S.D.N.Y. Mar. 31, 2009)(references to "girls" were
mere offensive utterances and insufficient to support a claim of
hostile work environment);  see also Hess v. ING, USA Annuity
and Life Ins. Co., No. CV-06-1844 (SMG), 2008 U.S. Dist. LEXIS
11174, at *15-18 (E.D.N.Y. Feb. 14, 2008).

     Andrew Silverman ultimately terminated plaintiff.  At most,
he and Alex Silverman are alleged to have apologized to
plaintiff for swearing in front of "a lady."  That is
insufficient to support an inference of discriminatory animus.

     Similarly, the closed door meeting with Marks at which he
allegedly yelled at plaintiff is insufficient to support an
inference of discrimination.  See Hansen v. Dean Witter Reynolds
Inc., 887 F.Supp 669, 674-75 (S.D.N.Y. 1995) (rejecting
screaming incident with supervisor as evidence of sex
discrimination).  "The law does not require an employer to like
his employees, or to conduct himself in a mature or professional
manner, or unfortunately, even to behave reasonably and justly

18

when he is peeved." Christoforou v. Ryder Truck Rental, Inc., 668 F. Supp. 294, 303 (S.D.N.Y. 1987). Title VII does not establish a general civility code for the workplace. Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010); Bickerstaff v. Vassar College, 196 F.3d 435, 451 (2d Cir. 1999). Moreover, plaintiff has failed to raise an inference that Marks's alleged comments about her being "strong willed" and not embarrassed to get what she wants are "code words" for gender-based comments, as plaintiff suggests. Such a suggestion is conclusory and speculative. On this record, no rational juror could conclude that those comments demonstrated that defendant's proffered reason of lack of skills was pretext for gender discrimination.

In terms of national origin, the comments that plaintiff attributes to Marks – that he said her accent was weird and referred to her alienage – are simply not actionable, let alone sufficient to raise a triable issue as to pretext. See, e.g., Kaur v. New York City Health and Hospitals Corp., 688 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) (two derogatory remarks about the plaintiff's national origin were too oblique in relation to the adverse employment action to establish an inferential connection between the remarks and the plaintiff's termination); Coleman v. Prudential Relocation, 975 F. Supp. 234, 243 (W.D.N.Y. 1997) (absent a demonstrated connection with the termination event itself, evidence of a supervisor's occasional use of offensive

comments or slurs is not sufficient to support a claim under Title VII).

Accordingly, summary judgment is appropriate on plaintiff's Title VII disparate treatment claims.

4. *Failure to Establish Pretext as to Retaliation*

Even if this Court were to assume that plaintiff has made out a <u>prima facie</u> case of retaliation, she has nonetheless failed to raise a triable issue of fact sufficient to survive summary judgment. First, as stated above, plaintiff has put forth on this motion only the September 3, 2008 meeting as a protected activity. That meeting was with Alex Silverman; Andrew Silverman made the ultimate decision to terminate plaintiff. Plaintiff has not raised a triable issue of fact – or even asserted any fact – that Alex communicated the alleged protected activity to Andrew. That alone defeats any claim for retaliation.

In addition, however, defendant has put forward legitimate, non-retaliatory reasons for plaintiff's termination causally unrelated to any protected activity. In order to survive summary judgment on her retaliation claim, plaintiff must raise a triable issue as to some causal connection between her alleged protected activity (<u>e.g.</u> her complaint about her compensation) and her termination. She has not done so.

First, plaintiff purportedly complained about her
compensation ten months after she had received her 2007 bonus
and months before she would have known the amount of her 2008
bonus.  The asserted timing of her complaint, therefore, makes
no sense.  In any event, plaintiff has failed to raise a triable
issue of fact connecting her compensation complaint to her
termination.  While it is true that "[a] plaintiff may assert
causal connection through allegations of retaliatory animus, or
else by circumstantial evidence, such as close temporal
proximity between the protected activity and the retaliatory
action," Perry v. State of N.Y. Dep't of Labor, 08 Civ. 4610
(PKC), 2009 U.S. Dist. LEXIS 74006, at *15 (S.D.N.Y. Aug. 20,
2009), mere closeness in time between a complaint and
termination does not establish the required nexus, see, e.g.,
Evans v. The New York Botanical Garden, 253 F. Supp. 2d 650, 661
n.9 (S.D.N.Y. 2003), aff'd, 88 Fed. Appx. 464 (2d Cir. 2004);
Ricks v. Conde Nast Publications, 92 F. Supp. 2d 338, 347
(S.D.N.Y. 2000).

No rational juror could find a connection between
plaintiff's complaint regarding her compensation and her
termination.  A rational juror could, however, find a connection
between her supervisor's negative view of her job performance
and her firing, including the fact that she walked out the door
the night before she was terminated at 5:15 p.m. with a squash

racket in her hand, despite the fact that she was in the middle of working on a project.

Accordingly, summary judgment is appropriate on plaintiff's Title VII retaliation claim.

IV.   NYSHRL AND NYCHRL CLAIMS

Discrimination claims under the NYSHRL and NYCHRL are subject to the same burden-shifting analysis applied to Title VII claims. Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010); see also Patane, 508 F.3d at 113 ("New York courts examine claims under those statutes with the same analytical lens as corresponding Title VII-based claims."). While claims "brought under [NYSHRL] are analytically identical to claims brought under Title VII," Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997), "claims under the City HRL must be reviewed independently from and more liberally than their federal and state counterparts," Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009). For all the reasons set forth above, however, even under a more liberal NYCHRL review, plaintiff cannot survive summary judgment on her state and local claims. See generally Williams v. New York City Housing Auth., 61 A.D.3d 62, 78-79 (1st Dep't 2009) (instructing that under the NYCHRL, a plaintiff must still raise a triable issue of fact "that she has been treated less well than other employees because of her gender," and that the "broader purposes of the

[statute] do not connote an intention that the law operate as a 'general civility code'" (emphasis added)).

V.   THE COBRA CLAIM

As the facts above demonstrate without the need for extensive discussion, it is clear that plaintiff has failed to raise a triable issue of fact on her COBRA claim.  To survive summary judgment on such a claim, a plaintiff must demonstrate evidence of harm.  Kelly v. Chase Manhattan Bank, 717 F. Supp. 227, 233 (S.D.N.Y. 1989); see also Rinaldo v. Grand Union Co., CV-89-3850 (RJD), 1995 U.S. Dist. LEXIS 20508, at *3-4 (E.D.N.Y. Mar. 8, 1995).  The record here demonstrates that plaintiff suffered no harm with respect to her lack of COBRA coverage. Accordingly, plaintiff's COBRA claim fails to survive summary judgment.

VI.   CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion at Docket Number 35 and to close this case.

SO ORDERED

Dated:    New York, New York
          May 22, 2012

                                        K B. Forrest
                                   _____

                                   KATHERINE B. FORREST
                                   United States District Judge

23